# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-1455V
Filed: March 13, 2023
UNPUBLISHED

|   |   |
|---|---|
| SABRINA COMPTON, and WAYNE COMPTON on behalf of L.C., a minor child,<br><br>                           Petitioners,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>                           Respondent. | Joint Stipulation on Damages; Measles, Mumps, Rubella ("MMR") vaccine; Varicella vaccine; Acute disseminated encephalomyelitis ("ADEM"). |

*Diana Stadelnikas, Maglio Christopher and Toale, PA, Sarasota, FL, for petitioner.*
*Christine Becer, U.S. Department of Justice, Washington, DC, for respondent.*

### DECISION ON JOINT STIPULATION[1]

On September 23, 2019, petitioners filed a petition for compensation on behalf of their minor child, L.C., under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioners allege that L.C. suffered symptoms including full body urticaria, gait imbalance, left sided weakness and brain MRI studies positive for white matter patches that were subsequently diagnosed as Acute disseminated encephalomyelitis ("ADEM"). (Petition at 2-3; Stipulation, filed March 13, 2023, at ¶ 4.) Petitioners further allege that L.C. has experienced the residual effects of his condition for more than six months, that there has been no prior award or settlement of a civil action for damages as a result of his condition, and that his vaccine was administered in the United States. (Petition at 4; Stipulation at ¶¶ 3-5.) "Respondent denies that the vaccines caused L.C. to suffer from ADEM or any other injury. " (Stipulation at ¶ 6.)

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Nevertheless, on March 13, 2023, the parties filed the attached joint stipulation, stating that a decision should be entered awarding compensation. I find the stipulation reasonable and adopt it as the decision of the Court in awarding damages, on the terms set forth therein.

Pursuant to the terms stated in the attached Stipulation, **I award the following compensation:**

- **A lump sum of $683,147.35,** which amount represents compensation for first year life care expenses ($117,971.05), partial lost future earnings ($365,176.30), and pain and suffering ($200,000.00), in the form of a check payable to petitioners as guardian(s)/conservator(s) of the estate of L.C. for the benefit of L.C. No payments shall be made until petitioners provide respondent with documentation establishing that they have been appointed as guardian(s)/conservator(s) of L.C.'s estate;

- **A lump sum of $5,000.00**, which amount represents compensation for past unreimbursable expenses, in the form of a check payable to petitioners, Sabrina Compton and Wayne Compton;

- **A lump sum of $33,299.43**, which amount represents reimbursement of a Florida Medicaid lien for services rendered on behalf of L.C., in the form of a check payable jointly to petitioners and;

> Equian
> PO Box 182643
> Columbus, OH 43218
> Equian Event #: 45760264
> Legacy Case #: 1049854
> Att: Ricoya Dismukes

  Petitioners agree to endorse this check to Equian.

- An amount sufficient to purchase the annuity contract described in the attached Stipulation at paragraph 10, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

These amounts represent compensation for all items of damages that would be available under § 15(a). (Stipulation, at ¶ 8.)

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment in accordance with this decision.[3]

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

OFFICE OF SPECIAL MASTERS

| | |
|---|---|
| SABRINA COMPTON and<br>WAYNE COMPTON on behalf of<br>L.C., a minor child,<br><br>           Petitioners,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN<br>SERVICES,<br><br>           Respondent. | No. 19-1455V<br>Special Master Horner<br>ECF |

## STIPULATION

The parties hereby stipulate to the following matters:

1. On behalf of their son, L.C., petitioners filed a petition for vaccine compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 to 34 (the "Vaccine Program"). The petition seeks compensation for injuries allegedly related to L.C.'s receipt of the measles, mumps, and rubella ("MMR"), varicella, and influenza ("flu") vaccines, which vaccines are contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3 (a).

2. L.C. received his immunizations on April 18, 2018.

3. The vaccines were administered within the United States.

4. Petitioners allege that the vaccines caused L.C. to suffer from acute disseminated encephalomyelitis ("ADEM"), and that L.C. experienced residual effects of this injury for more than six months.

5. Petitioners represent that there has been no prior award or settlement of a civil action for damages on behalf of L.C. as a result of his condition.

1

6. Respondent denies that the vaccines caused L.C. to suffer from ADEM or any other injury.

7. Maintaining their above-stated positions, the parties nevertheless now agree that the issues between them shall be settled and that a decision should be entered awarding the compensation described in paragraph 8 of this Stipulation.

8. As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioner has filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

> a. A lump sum of $683,147.35, which amount represents compensation for first year life care expenses ($117,971.05), partial lost future earnings ($365,176.30), and pain and suffering ($200,000.00), in the form of a check payable to petitioners as guardian(s)/conservator(s) of the estate of L.C. for the benefit of L.C. No payments shall be made until petitioners provide respondent with documentation establishing that they have been appointed as guardian(s)/conservator(s) of L.C.'s estate;

> b. A lump sum of $5,000.00, which amount represents compensation for past unreimbursable expenses, in the form of a check payable to petitioners, Sabrina Compton and Wayne Compton;

> c. A lump sum of $33,299.43, which amount represents reimbursement of a Florida Medicaid lien for services rendered on behalf of L.C., in the form of a check payable jointly to petitioners and
>
> 
> Equian<br>
> PO Box 182643<br>
> Columbus, OH 43218<br>
> Equian Event #: 45760264<br>
> Legacy Case #: 1049854<br>
> Att: Ricoya Dismukes
> 

Petitioners agree to endorse this check to Equian.

> d. An amount sufficient to purchase the annuity contract described in paragraph 10 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

These amounts represent compensation for all damages that would be available under 42 U.S.C. §300aa-15(a).

9. The Life Insurance Company must have a minimum of $250,000,000.00 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

   a.  A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

   b.  Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

   c.  Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

   d.  Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

10. The Secretary of Health and Human Services agrees to purchase an annuity contract from the Life Insurance Company for the benefit of L.C., pursuant to which the Life Insurance Company will agree to make payments periodically to petitioners, as the court-appointed guardian(s)/conservator(s) of the estate of L.C. for the following items of compensation:

> a. For future unreimbursable Blue Cross Blue Shield Premium expenses, beginning on the first anniversary of the date of judgment, an annual amount of $5,852.16 to be paid up to the anniversary of the date of judgment in year 2032. Then, beginning on the anniversary of the date of judgment in year 2032, an annual amount of $6,372.36 to be paid up to the anniversary of the date of judgment in year 2033. Then, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $6,571.20 to be paid up to the anniversary of the date of judgment in year 2034. Then, beginning on the anniversary of the date of judgment in year 2034, an annual amount of $6,770.16 to be paid up to the anniversary of the date of judgment in year 2035. Then, beginning on the anniversary of the date of judgment in year 2035, an annual amount of $6,984.36 to be paid up to the anniversary of the date of judgment in year 2036. Then, beginning on the anniversary of the date of judgment in year 2036, an annual amount of $7,198.56 to be paid up to the anniversary of the date of judgment in year 2037. Then, beginning on the anniversary of the date of judgment in year 2037, an annual amount of $7,420.44 to be paid up to the anniversary of the date of judgment in year 2038. Then, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $7,649.88 to be paid up to the anniversary of the date of judgment in year 2041, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

b. For future unreimbursable Blue Cross Blue Shield Maximum out of Pocket expenses, beginning on the first anniversary of the date of judgment, an annual amount of $5,500.00 to be paid up to the anniversary of the date of judgment in year 2041, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

c. For future unreimbursable Medicare Part B Premium and Medigap expenses, beginning on the anniversary of the date of judgment in year 2041, an annual amount of $10,771.20 to be paid up to the anniversary of the date of judgment in year 2082. Thereafter, beginning on the anniversary of the date of judgment in year 2082, an annual amount of $4,591.20 to be paid for the remainder of L.C.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

d. For future unreimbursable Medicare Part B Deductible expenses, beginning on the anniversary of the date of judgment in year 2041, an annual amount of $233.00 to be paid for the remainder of L.C.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

e. For future unreimbursable Pediatrician/Primary Care Physician Mileage, Pain Management and Rehab Mileage, Spasticity Clinic Mileage, Neurologist Mileage, Orthopedist Mileage, Soft Tissue Release Mileage, Hip Osteotomy Mileage, Neuropsychology Evaluation Mileage, and Counseling Mileage expenses, beginning on the first anniversary of the date of judgment, an amount of $151.01 to be paid up to the anniversary of the date of judgment in year 2027. Then, on the anniversary of the date of judgment in year 2027, a lump sum of $301.31. Then, beginning on the anniversary of the date of judgment in year 2028, an annual amount of $224.93 to be paid up to the anniversary of the date of judgment in year 2036. Then, beginning on the anniversary of the date of judgment in year 2036, an annual amount of $278.66 to be paid up to the anniversary of the date of judgment in year 2039. Then, on the anniversary of the date of judgment in year 2039, a lump sum of $256.35. Then, on the anniversary of the date of judgment in year 2040, a lump sum of $182.43. Then, on the anniversary of the date of judgment in year 2041, a lump sum of $231.71. Then, beginning on the anniversary of the date of judgment in year 2042, an annual amount of $182.43 to be paid up to the anniversary of the date of judgment in year 2045. Then, on the anniversary of the date of judgment in year 2045, a lump sum of $231.71. Then, beginning on the anniversary of the date of judgment in year 2046, an annual amount of $182.43 to be paid up to the anniversary of the date of judgment in year 2049. Then, on the anniversary of the date of judgment in year 2049, a lump sum of $231.71. Then, beginning on the anniversary of the date of judgment in year 2050, an annual amount of $182.43 to be paid up to the anniversary of the date of judgment in year 2053. Then, on the anniversary of the date of judgment in year 2053, a lump sum of $231.71. Then, beginning on the anniversary of the date of judgment in year 2054, an annual amount of $182.43 to be paid up to the anniversary of the date of judgment in year 2057. Then, on the anniversary of the date of judgment in year 2057, a lump sum of $231.71. Then, beginning on the anniversary of the date of judgment in year 2058, an annual amount of $182.43 to be paid up to the anniversary of the date of judgment in year 2061. Then, on the anniversary of the date of

judgment in year 2061, a lump sum of $231.71. Thereafter, beginning on the anniversary of the date of judgment in year 2062, an annual amount of $182.43 to be paid for the remainder of L.C.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

f. For future unreimbursable Care Management and Baclofen expenses, beginning on the first anniversary of the date of judgment, an annual amount of $2,520.00 to be paid up to the anniversary of the date of judgment in year 2035. Then, beginning on the anniversary of the date of judgment in year 2035, an annual amount of $5,040.00 to be paid up to the anniversary of the date of judgment in year 2040. Then, beginning on the anniversary of the date of judgment in year 2040, an annual amount of $3,780.00 to be paid up to the anniversary of the date of judgment in year 2041. Then, beginning on the anniversary of the date of judgment in year 2041, an annual amount of $4,123.10 to be paid up to the anniversary of the date of judgment in year 2077. Thereafter, beginning on the anniversary of the date of judgment in year 2077, an annual amount of $5,383.10 to be paid for the remainder of L.C.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

g. For future unreimbursable Power Scooter, Scooter Battery, and Scooter Carrier expenses, on the anniversary of the date of judgment in year 2032, a lump sum of $4,042.00. Thereafter, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $728.82 to be paid for the remainder of L.C.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

h. For future unreimbursable Transfer Chair, Bedside Commode, and Home Occupational Therapy Assessment expenses, on the first anniversary of the date of judgment, a lump sum of $245.83. Then, beginning on the second anniversary of the date of judgment, an annual amount of $94.56 to be paid up to the anniversary of the date of judgment in year 2053. Thereafter, beginning on the anniversary of the date of judgment in year 2053, an annual amount of $73.81 to be paid for the remainder of L.C.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

i. For future unreimbursable Physical Therapy Evaluation Mileage, Occupational Therapy Evaluation Mileage, Physical Therapy Mileage, Occupational Therapy Mileage, Speech Therapy Evaluation Mileage, Speech Therapy Mileage, and Seating Clinic Mileage expenses, beginning on the first anniversary of the date of judgment, an annual amount of $2,458.76 to be paid up to the anniversary of the date of judgment in year 2033. Then, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $2,451.24 to be paid up to the anniversary of the date of judgment in year 2038. Then, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $862.10 to be paid up to the anniversary of the date of judgment in year 2058. Thereafter, beginning on the anniversary of the date of judgment in year 2058, an annual amount of $301.05 to be paid for the remainder of L.C.'s life, all amounts

increasing at the rate of three percent (3%), compounded annually from the date of judgment.

j. For future unreimbursable Physical Therapy, Occupational Therapy, Occupational Therapy at Home, and Speech Therapy expenses, beginning on the first anniversary of the date of judgment, an annual amount of $21,150.00 to be paid up to the anniversary of the date of judgment in year 2038. Then, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $5,115.00 to be paid up to the anniversary of the date of judgment in year 2041, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

k. For future unreimbursable Speech Therapy Evaluation expenses, beginning on the first anniversary of the date of judgment, an annual amount of $520.00 to be paid up to the anniversary of the date of judgment in year 2038, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

l. For future unreimbursable Seating Clinic expenses, beginning on the first anniversary of the date of judgment, an annual amount of $240.00 to be paid up to the anniversary of the date of judgment in year 2033. Then, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $96.00 to be paid up to the anniversary of the date of judgment in year 2038, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

m. For future unreimbursable Gym Membership and Mileage for Gym expenses, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $1,427.35 to be paid up to the anniversary of the date of judgment in year 2039. Then, beginning on the anniversary of the date of judgment in year 2039, an annual amount of $1,392.95 to be paid up to the anniversary of the date of judgment in year 2082, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

n. For future unreimbursable Driver Evaluation expenses, on the anniversary of the date of judgment in year 2033, a lump sum of $5,825.00, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

o. For future unreimbursable Personal Care Attendant and Personal Care Attendant Post Surgery/Respite expenses, beginning on the first anniversary of the date of judgment, an annual amount of $15,899.52 to be paid up to the anniversary of the date of judgment in year 2027. Then, beginning on the anniversary of the date of judgment in year 2027, an annual amount of $23,033.92 to be paid up to the anniversary of the date of judgment in year 2028. Then, beginning on the anniversary of the date of judgment in year 2028, an annual amount of $15,899.52 to be paid up to the anniversary of the date of judgment in year 2035. Then, beginning on the anniversary of the date of judgment in year 2035, an annual amount of $43,800.00 to be paid up to the anniversary of the date of judgment in year 2082. Thereafter, beginning on the anniversary of the date of judgment in year 2082, an annual amount of $70,080.00 to be paid for the remainder of L.C.'s life, all

amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

p. For future unreimbursable Cleaning Service expenses, beginning on the anniversary of the date of judgment in year 2040, an annual amount of $1,200.00 to be paid for the remainder of L.C.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

q. For future unreimbursable Home Modification expenses, on the anniversary of the date of judgment in year 2040, a lump sum of $50,000.00. Then, on the anniversary of the date of judgment in year 2060, a lump sum of $50,000.00, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

r. For future unreimbursable Auto Hand Control & Evo Seat expenses, on the anniversary of the date of judgment in year 2033, a lump sum of $15,500.00. Thereafter, beginning on the anniversary of the date of judgment in year 2034, an annual amount of $1,550.00 to be paid for the remainder of L.C.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

At the sole discretion of the Secretary of Health and Human Services, the periodic payments may be provided to the petitioner in monthly, quarterly, annual, or other installments. The "annual amounts" set forth above describe only the total yearly sum to be paid to the petitioner and do not require that the payment be made in one annual installment. The petitioner will continue to receive the annuity payments from the Life Insurance Company only so long as L.C. is alive at the time that a particular payment is due. Written notice to the Secretary of Health and Human Services, and the Life Insurance Company shall be provided within twenty (20) days of L.C.'s death.

11. The annuity contract will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 8 herein and the amounts awarded pursuant to paragraph 12 herein, and that they do not guarantee or insure any of the

7

future annuity payments. Upon the purchase of the annuity contract, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

12. As soon as practicable after the entry of judgment on entitlement in this case, and after petitioners have filed both a proper and timely election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings before the special master to award reasonable attorneys' fees and costs incurred in proceeding upon this petition.

13. Petitioners and their attorney represent that compensation to be provided pursuant to this Stipulation is not for any items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), to the extent that payment has been made or can reasonably be expected to be made under any State compensation programs, insurance policies, Federal or State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or by entities that provide health services on a pre-paid basis.

14. Payments made pursuant to paragraph 8 and any amounts awarded pursuant to paragraph 12 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

15. The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees and litigation costs, and past unreimbursable expenses, the money provided pursuant to this Stipulation will be used solely for the benefit of L.C. as contemplated by a strict construction of 42 U.S.C. §300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

16. Petitioners represent that they presently are, or within 90 days of the date of

8

judgment will become, duly authorized to serve as guardian(s)/conservator(s) of L.C.'s estate under the laws of the State of Florida. No payments pursuant to this Stipulation shall be made until petitioners provide the Secretary with documentation establishing their appointment as guardian(s)/conservator(s) of L.C.'s estate. If petitioners are not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of L.C. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of L.C. upon submission of written documentation of such appointment to the Secretary.

17. In return for the payments described in paragraphs 8 and 12, petitioners, in their individual capacities and as legal representatives of L.C., on behalf of themselves, L.C., and his heirs, executors, administrators, successors or assigns, do forever irrevocably and unconditionally release, acquit and discharge the United States and the Secretary of Health and Human Services from any and all actions or causes of action (including agreements, judgments, claims, damages, loss of services, expenses and all demands of whatever kind or nature) that have been brought, could have been brought, or could be timely brought in the Court of Federal Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300 aa-10 et seq., on account of, or in any way growing out of, any and all known or unknown, suspected or unsuspected personal injuries to or death of L.C. resulting from, or alleged to have resulted from, the vaccinations administered on April 18, 2018, as alleged by petitioners in a petition for vaccine compensation filed on or about September 23, 2019, in the United States Court of Federal Claims as petition No. 19-1455V.

18. If L.C. should die prior to entry of judgment, this agreement shall be voidable upon

proper notice to the Court on behalf of either or both of the parties.

19. If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a decision that is in complete conformity with the terms of this Stipulation, then the parties' settlement and this Stipulation shall be voidable at the sole discretion of either party.

20. This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except as otherwise noted in paragraph 12 above. There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to. The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

21. Petitioners hereby authorize respondent to disclose documents filed by petitioners in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

22. This Stipulation shall not be construed as an admission by the United States or the Secretary of Health and Human Services that the MMR, varicella, or flu vaccines caused L.C. to suffer ADEM or any other injury or condition.

23. All rights and obligations of petitioners hereunder shall apply equally to petitioners' heirs, executors, administrators, successors, and/or assigns as legal representatives of L.C.

END OF STIPULATION

PETITIONER:

*[signature]*
SABRINA COMPTON

PETITIONER:

*[signature]*
WAYNE COMPTON

ATTORNEY OF RECORD FOR
PETITIONER:

*[signature]*
DIANA L. STADELNIKAS, ESQ.
Maglio Christopher & Toale, PA
1605 Main Street, Suite 710
Sarasota, FL 34236
Tel: (888) 952-5242
Email: dstadelnikas@mctlawyers.com

AUTHORIZED REPRESENTATIVE
OF THE SECRETARY OF HEALTH
AND HUMAN SERVICES:

George R. Grimes -S14 *[digitally signed]*

CDR GEORGE REED GRIMES, MD, MPH
Director, Division of Injury
 Compensation Programs
Health Systems Bureau
Health Resources and Services
 Administration
U.S. Department of Health
 and Human Services
5600 Fishers Lane, 08N146B
Rockville, MD 20857

Dated: **3/13/23**

AUTHORIZED REPRSENTATIVE
OF THE ATTORNEY GENERAL:

*[signature]*
HEATHER L. PEARLMAN
Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

ATTORNEY OF RECORD FOR
RESPONDENT:

*[signature]*
CHRISTINE M. BECER
Trial Attorney
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
Tel: (202) 616-3665
Christine.M.Becer@usdoj.gov